## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE BOBE-MUÑIZ                          *
                                     *
Plaintiff                                *        **Civil No. 96-2248(SEC)**
                                     *
v.                                       *        ADEA
                                     *
CARIBBEAN RESTAURANTS, INC.              *
                                     *
Defendant                                *
************************************

### OPINION AND ORDER

Plaintiff brought this action against his employer, Caribbean Restaurants, Inc., for

discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et. seq.,

the Civil Rights Act, 42 U.S.C. § 1981, and Commonwealth Law No. 100 of June 30, 1959, as

amended, 29 L.P.R.A. § 146 et seq. ("Law No. 100"); and for wrongful discharge pursuant to

Commonwealth Law No. 80 of May 30, 1976, as amended, 29 L.P.R.A. § 185 et seq. (**Docket # 1**).

On March 12, 1998, the Court issued an opinion and order (**Docket # 23**) granting defendant's

motion for summary judgment. (**Docket # 13**). Judgment of dismissal was entered on March 13,

1998. (**Docket # 24**). Pending is defendant's motion for attorney's fees (**Dockets # 26 and # 29**),

which remains unopposed.[1] In this motion, defendant seeks an award of $ 27, 649.00 against

---

[1] The only semblance of an opposition in the record is a motion filed by plaintiff on June 3,
1999, requesting that defendant's motion for attorney's fees be denied on the ground that defendant
failed to serve him with a copy of the motion itemizing the requested fees. (**Docket # 30**). However,
defendant subsequently replied and demonstrated that plaintiff was duly served. (**Docket # 31**). As
plaintiff has failed to otherwise oppose defendant's motion for attorney's fees (he has not challenged
either the hourly rates, the hours spent, or the amount of the award sought by defendant) we proceed
to rule upon it as if it were unopposed. See Local Rule 332 ("Any party wishing to respond to the
petition [for attorney's fees] must file responsive materials with the Court within fifteen (15) days
after service of the petition.").

Civil No. 96-2248(SEC)                                                                    2

plaintiff and/or his attorney under the bad-faith exception to the American Rule, 28 U.S.C. § 1927,

Fed. R. Civ. P. 11(c), and Local Rule 311.13. In essence, defendant alleges that this suit was

frivolous as it was without any basis in fact or law, and that it was brought and pursued vexatiously

and in bad faith.

**Background**

As summarized in our opinion and order, plaintiff averred to have been "discriminated

against on the basis of his age because despite the fact that he ha[d] no transportation and ha[d] to

walk home through a dangerous part of town, defendant ha[d] insisted on keeping him on the night

shift. He further contend[ed] that defendant want[ed] to get rid of him because he is an old person."

(**Docket # 23, at 9**). After careful examination of the relevant facts, the applicable law, and the

arguments advanced by the parties, we held that plaintiff failed to make a *prima facie* case of age

discrimination. (**Docket # 23, at 12**). As stated in our opinion and order:

> The relevant facts, which have been deemed undisputed, certainly
> demonstrate that **plaintiff has not met defendant's legitimate job performance
> expectations**. He has been suspended at least five times for his failure to comply
> with defendant's Rules of Conduct. **Plaintiff himself has recognized that,
> pursuant to the company's Rules of Conduct, he should have been terminated
> from his employment by now**. In refusing to appeal any of defendant's decisions
> to suspend him, **plaintiff has also acknowledged, albeit tacitly, that the discipline
> which has so far been imposed upon him is in accordance with the company's
> Rules of Conduct**.
>
> It also seems clear that **plaintiff has not suffered an adverse employment
> action. At the time this motion was filed on May of 1997, plaintiff was still
> working at Burger King; not only that, but he was working at the restaurant
> closest to his home, as per his attorney's request**. He has never been terminated
> or constructively discharged through a reduction in work hours or wages, a
> modification of his duties, or any other means. . . .
>
> Plaintiff's suspensions cannot, as plaintiff would have us believe, be deemed
> an adverse employment action. **Plaintiff himself has recognized that defendant**

**acted within the confines of its Rules of Conduct when it decided to suspend plaintiff for his actions or lack thereof. . . .**

**Finally, plaintiff himself admitted in his deposition testimony that he had not been replaced in his employment, and that whenever he was suspended, his co-workers absorbed his workload.** Thus, he has also failed to establish that defendant retained younger persons in his same position.

Notwithstanding the foregoing, even if we were to assume for the sake of argument, that plaintiff did establish a prima facie case of discrimination, the fact is that **defendant has clearly established a legitimate, nondiscriminatory reason for its actions**. The undisputed facts clearly demonstrate that defendant always followed its own Rules of Conduct when deciding how to reprimand plaintiff for his actions or lack thereof; and that defendant actually erred on the side of caution, since even though some of plaintiff's actions warranted his termination, defendant merely suspended him.

The fact that plaintiff was transferred from the Bus Burger Express to the Mayagüez Mall restaurant, which was farther away from his home, hardly qualifies as discriminatory. No full time worker has been retained to work at the Bus Burger Express since plaintiff's transfer. Furthermore, no Burger King employee is guaranteed a particular restaurant or a particular shift, regardless of his or her age.

**Plaintiff has proffered no evidence whatsoever to prove that defendant's alleged non-discriminatory reasons were only a pretext to shield its intent to discriminate against him on the basis of his age. He has merely advanced conclusory allegations and unsupported speculations . . . to demonstrate defendant's discrimination. . . .**

(**Id., at 12-13**).

Under these circumstances, and particularly considering plaintiff's own admissions, defendant alleges that "it is difficult to believe that the complaint was drafted with a belief that it had a basis in fact or law." (**Docket # 26, at 11**). Defendant contends, moreover, that "[p]laintiff and his attorney . . . also incurred in vexatious litigation by prolonging the life of plaintiff's claim after it became evident that it was frivolous . . . ." (**Id. at 13**). Furthermore, defendant seeks attorney's fees under Local Rule 311.13 for violation of Local Rule 311.12, in that plaintiff failed to properly

oppose its summary judgment motion. (**Id.**). It is worth noting that defendant has requested the imposition of sanctions since the beginning of this suit, based on the frivolous nature of plaintiff's claims. (**Docket # 4, at ¶ 16; Docket # 10, at 14; Docket # 15**).

**Applicable Law**

Under the so-called common-law "American Rule," litigants must bear the cost of their attorneys' fees in the absence of explicit congressional authorization to the contrary. <u>See</u> <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 415 (1978); <u>Bercovitch v. Baldwin School, Inc.</u>, 191 F.3d 8, 10 (1st Cir. 1999). One exemption to this rule is that a court may award attorney's fees if the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Alyeska Pipeline Serv. Co. v. Wilderness Society</u>, 421 U.S. 240, 258-59 (1975). "[T]he term 'vexatious' means that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" <u>Local 285 v. Nonotuck Resource Associates, Inc.</u>, 64 F.3d 735, 737 (1st Cir. 1995) (citations omitted). Attorneys's fees are available for a prevailing defendant under this exception in ADEA cases, inasmuch as the ADEA authorizes an award of attorney's fees only to a prevailing plaintiff. <u>See Gray v. New England Telephone and Telegraph Co.</u>, 792 F.2d 251, 260 (1st Cir. 1986).

Section 1927 of the United States Code, moreover, establishes that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." Behavior is deemed "vexatious," for purposes of § 1927, "when it is harassing or annoying, regardless of whether it is intended to be so." <u>Cruz v. Savage</u>, 896 F.2d 626, 632 (1st Cir. 1990). This is an objective standard; subjective bad faith is not necessary. <u>Id.</u> Thus, "[t]he attorney

need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a 'serious and studied disregard for the orderly process of justice.'" Id. (citation omitted). "Yet, . . . section 1927's requirement that the multiplication of the proceedings be 'vexatious' necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence." Id. (citation omitted).

Furthermore, Fed. R. Civ. P. 11 generally requires attorneys "to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescrib[es] sanctions for violation of these obligations." Fed. R. Civ. P. 11 advisory committee's note. The purpose of Rule 11 is twofold: to streamline the litigation process and deter abusive tactics without chilling innovative advocacy. See Kale v. Combined Ins. Co. of America, 861 F.2d 746, 758 (1st Cir. 1988) (quoting Fed. R. Civ. P. 11 advisory committee's note). While the rule requires attorneys to "'stop-and-think' before initially making legal or factual contentions," it also subjects attorneys to potential sanctions "for insisting upon a position after it is no longer tenable . . . ." Fed. R. Civ. P. 11 advisory committee's note. Thus, an attorney's obligations with respect to the contents of his or her pleadings "are not measured solely as of the time they are filed or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have merit." Id. See also Kale, 861 F.2d at 758 ("Rule 11 imposes a duty on counsel to investigate their clients' claims before making any filings and to reassess them throughout the litigation.").

Finally, Local Rule 311.12 requires the party opposing a motion for summary judgment to "include a separate, short, and concise statement of the material facts as to which it is contended that

there exists a genuine issue to be tried . . . ." Local Rule 311.13, on its part, establishes the sanctions available for violation of Rule 311.13: "[t]he presentation to the Court of unnecessary motions and unwarranted oppositions to motions, may subject the party or counsel to imposition of costs and/or attorneys' fees."

**Analysis**

As it is clear from our opinion and order granting summary judgment in favor of defendant, the factual allegations contained in plaintiff's complaint did not even meet the requirements of a *prima facie* case of age discrimination under <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802-05 (1973) and subsequent case law. To establish a *prima facie* case of age discrimination a plaintiff needs to show "(1) that he or she fell within the ADEA's protected age group—that is, more than forty years of age; (2) that he or she met [the employer's] legitimate performance expectations; (3) that he or she experienced [an] adverse employment action; and (4) that [the employer] did not treat age neutrally or retained younger persons in the same position." <u>Pages-Cahue v. Iberia Líneas Aéreas de España</u>, 82 F.3d 533, 536 (1st Cir. 1996). In this case, plaintiff could only establish that he fell within the ADEA's protected age group. The averments purportedly supporting the remaining factors were simply misstatements of fact. First, plaintiff did not meet defendant's legitimate performance expectations. "Plaintiff himself recognized that, pursuant to . . . [defendant's] Rules of Conduct, he should have been terminated from his employment . . . ." **(Docket 23, at 12)**. Second, he did not experience an adverse employment action. At the time plaintiff filed the complaint he was still working at one of defendant's restaurants; "not only that, but he was working at the restaurant closest to his home . . . ." **(Id. at 12-13)**. Moreover, he had "never been terminated or constructively discharged through a reduction in work hours or wages, a modification of his

duties, or any other means." **(Id. at 13)**. Third, plaintiff "had not been replaced in his employment, and . . . whenever he was suspended, his co-workers absorbed his workload." **(Id.)**. Furthermore, plaintiff "proffered no evidence whatsoever to prove that defendant's alleged non-discriminatory reasons were only a pretext to shield its intent to discriminate against him on the basis of his age. He . . . merely advanced conclusory allegations and unsupported speculations . . . to demonstrate defendant's discrimination." **(Id. at 14)**.

The foregoing findings and conclusions of law stated in our opinion and order granting summary judgment in favor of defendant, support a finding that plaintiff's claims were frivolous, as they lacked any factual support at the time he filed his complaint and were brought before this court vexatiously and without foundation. This conduct warrants the imposition of attorney's fees in this case under the bad-faith-exception to the American Rule.

Moreover, those same findings and conclusions stated in our opinion and order granting summary judgment in favor of defendant, support the conclusion that plaintiff's counsel failed to discharge his Rule 11 obligations by, on behalf of his client, drafting, signing and filing a complaint which lacked any basis in fact or law. Even if this was not evident to counsel at the time the complaint was filed, it should have been clear to him, after proper investigation of the relevant facts and applicable law, that plaintiff's position was factually and legally insufficient, and thus untenable. This should have been so, particularly after the taking of plaintiff's deposition on March 19, 1997, and April 4, 1997. **(Docket # 13, Exhibits B-I and B-II)**. Indeed, after filing its motion for summary judgment, defendant filed a "Motion Requesting Sanctions" under Rule 11 and the bad-faith-exception to the American Rule, based on plaintiff's deposition testimony. **(Docket # 15)**.

Finally, in persisting in this lawsuit by stubbornly and unobservingly opposing defendant's motion (plaintiff failed to even comply with the basic requirements set forth in Local Rule 311.12), plaintiff's counsel vexatiously multiplied the proceedings in violation of 28 U.S.C. § 1927. See, e.g., Taylor v. Belger Cartage Service, Inc., 102 F.R.D. 172, 180 (1984) (Section 1927 and Rule 11 sanctions warranted, *inter alia*, for counsel's stubborn and unfounded opposition to a summary judgment motion). Indeed, not only did plaintiff unfoundedly opposed defendant's summary judgment motion, but he subsequently forwarded defendant a second set of interrogatories requesting irrelevant documentation, "such as the names and ages of all persons, who, during the last seven (7) years ha[d] applied, been hired, been promoted, or been suspended by defendant, who employs over 5000 employees." **(Docket # 26, at 12)**.

We now turn to determine the proper amount of attorney's fees and sanctions in this case. "Although the Age Discrimination in Employment Act is not a civil rights act within the meaning of section 1988, age discrimination cases commonly cite section 1988 cases on fee questions." Heiar v. Crawford County, Wisconsin, 746 F.2d 1190, 1203 (7th Cir.1984), *cited* in Freeman v. Package Machinery Co., 865 F.2d 1331, 1347 (1st Cir. 1988). Thus, we proceed to determine the fees award using the lodestar method, as it is the "strongly preferred method by which district courts should determine fees to award prevailing parties" in this type of cases. Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997).

The lodestar method "contemplates judicial ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' as the starting point in constructing a fee award." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This is not to say, however, that "the court is in thrall to an attorney's time records." Id. Rather, the district court "can

segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent." Id. (citations omitted).[2]

Notwithstanding, some courts have held that when, as in this case, a plaintiff fails to challenge a prevailing defendant's affidavit stating that the hourly rates charged were their normal and customary billing rates or to challenge the number of hours attested as spent on the litigation, the trial court is not at liberty to disregard those uncontested allegations and reduce the award requested, unless on the basis of the court's personal knowledge as to the time spent on the case.[3] See McDonald v. McCarthy, 966 F.2d 112, 118-19 (3d Cir. 1992). See also Mongas v. Glover Landing Condominium Trust, 986 F.2d 1407 (1st Cir. 1993), 1993 WL 50844, at **3 (unpublished opinion), accord McDonald (same). Therefore, "[w]hile the district court's review is 'to ensure that a fee award, overall, is justified, and that the amount of the award comes within the realm of reasonableness, broadly defined[,]' it is not 'the court's job either to do the target's homework or to take heroic measures aimed at salvaging the target from the predictable consequences of self-indulgent lassitude.'" Id. (citing Foley v. Lowell, 948 F.2d 10, 20-21 (1st Cir. 1991)).

In this case, defendant submitted a motion itemizing the fees requested.  (**Docket # 29**). Accompanying this motion, defendant's attorneys submitted sworn statements together with detailed and contemporaneous records of the time spent in the litigation of this case, broken down into tenths

---

[2] "In this and other ways, the trial court, though adhering to the time-and-rate-based method of fee calculation, may fashion a lodestar which differs substantially from the fee requested by the prevailing party. Moreover, the trial court retains the authority to adjust the lodestar after initially computing it—but it must do so in accordance with accepted principles." Coutin v. Young & Rubicam, Inc., 124 F.3d 331, 337 (1st Cir. 1997) (citation omitted).

[3] "However, even when a court disallows lodestar time in these limited circumstances, it must make an explicit finding that the disallowed hours were not in fact expended on the case." McDonald v. McCarthy, 966 F.2d 112, 119 (3d Cir. 1992).

of hours. The three attorneys who participated in this litigation, all from the firm O'Neill & Borges, are: Jorge L. Capó Matos, who was involved in the suit from its inception, María de Lourdes Medina, who was also involved in the case from its inception but left the firm on October 1997, and José Fco. Benítez Mier, who joined the team in the final stages of the case.

**Reasonableness of the Hourly Rates**

Jorge L. Capó Matos has been an attorney for at least twenty years, eighteen of which have been dedicated to labor and employment practice. He is also a proprietary partner of O'Neill & Borges. His hourly was $190/hr from December 1996 to August 1997, and $195/hr from August 1997 to March 1998. (**Docket # 29, at ¶ 19**). He spent 21.10 hours in this case, for a total of $ 4,031.50. (**Id. at ¶¶ 19, 20**). María de Lourdes Medina was a non-proprietary partner of O'Neill & Borges. By the time she concluded her involvement in this suit, Medina had at least six years of experience as an attorney. (**Id. at ¶¶ 21, 22**). Her hourly rate was $125/hr. She worked 182.80 hours in this case, for a total amount of $22,849.50. (**Id. at ¶¶ 26, 27**). Finally, José Fco. Benítez Mier is an associate at O'Neill & Borges, and has less than three years of experience as an attorney. (**Id. at ¶¶ 3, 4**). His hourly rate is $105/hr. He spent 8.50 hours in this case, for a total amount of $892.50. (**Id. at ¶¶ 6, 7**). As plaintiff has failed to challenge defendant's attorney's hourly rates and time spent, we admit these allegations as uncontested. However, we find that some of the hours spent by defendant's attorney in this case should be deducted as either excessive or nonspecific.

**Time Records**

The following entries in attorney Capó Matos' time records, which are for intra-office conferences with attorney Medina, do not have a corresponding entry in Medina's time records: conference of 3/14/97, conference of 05/27/97 and conference of 8/14/97. These entries represent

a total of 1.00 hour, which will be deducted accordingly. We also deduct the entry of 2/25/97 for

"review of motion to Court," as nonspecific. Because there is no indication of what this motion is

about, there is no way of assessing the reasonableness of the time spent reviewing it. For example,

reviewing a motion for summary judgment does not require the same effort and skill as reviewing

a motion for extension of time. The entry for this task is 0.70 hours. In total, we are shall deduct

1.70 hours from the time records of attorney Capó Matos.

The time recorded through the following entries in attorney Medina's time records should

also be deducted. The entries of 2/25/97 and 3/20/97 for intra-office conferences with attorney Capó

Matos do not have a corresponding entry in the latter's time records. As these items are mixed with

other items in the same entries, there is no way to accurately allocate the time spent on each work

performed. However, the conferences were for discussion of a motion to compel discovery and for

the scheduling of, and strategy for, a deposition and discovery compliance. Comparing the subject

of similar conferences accounted for in the time records, we believe that a combined deduction of

2.00 hours is not unreasonable. Moreover, attorney Medina's records contain various entries for

overseeing the filing of motions, which we believe is a job that could have been more cost-effectively

performed by a paralegal, whose hourly rate would have been lower than a non-proprietary partner.

Again, some of these items are mixed with others, making it difficult to allocate, with enough

specificity, the time spent on them. However, we feel that 0.30 for each such item is not

unreasonable. The entries reflecting items for overseeing the filing of motions by attorney Medina

are those of 12/10/96, 2/25/97, 3/24/97, 5/19/97, 6/4/97, 6/17/97 and 7/11/97. The deduction of time

spent on this job represents a total of 2.10 hours.

AO 72A
(Rev. 8/82)

**Civil No. 96-2248(SEC)**                                                                          12

Finally, the time records of attorney Benítez Mier contain a reference to the drafting of a certain "J.C. Pérez's sworn statement," which is not in the record of the case, and presumably was not used in its defense. As this item is mixed with others in the same entry, we are unable to specifically ascertain the actual time spent on this job. However, 1.00 hour does not seem unreasonable. We summarize the award granted for each attorney as follows:

1. <u>Jorge L. Capó Matos</u>

| | | | |
|---|---|---|---|
| Original Fee Petition: | 21.10 hrs | | |
| Adjustments: | - 1.70 hrs | | |
| | ====== | | |
| | 19.40 hrs | | |
| | | | |
| Hours @ $190/hr: | 14.90 x 190 | = | 2831.00 |
| Hours @ $ 195/hr | 4.50 x 195 | = | 877.50 |
| | | | ====== |
| **Total:** | | | **$ 3708.50** |

2. <u>María de Lourdes Medina</u>

| | |
|---|---|
| Original fee petition: | 182.80 hrs |
| Adjustments: | -  4.10 hrs |
| | ======= |
| | 178.70 hrs |
| | x $125/hr |
| | ======= |
| | |
| **Total:** | **$ 22,337.50** |

3. <u>José Fco. Benítez Mier</u>

| | |
|---|---|
| Original Fee Petition: | 8.50 hrs |
| Adjustment: | -1.00 hr |
| | ======= |
| | |
| | 7.50 hrs |
| | x $105/hr |
| | ======= |
| **Total:** | **$ 787.50** |

Civil No. 96-2248(SEC)                                                                          13

Accordingly, the total adjusted award amounts to **$26,833.50**.

Now, having previously found that plaintiff's attorney's conduct ran afoul 28 U.S.C. § 1927

and Fed. R. Civ. P. 11, we believe that he should be sanctioned in 75% of the fee award, to wit

**$20,125.13**.  Plaintiff shall be responsible for the remaining 25%, to wit: **$6,708.37**.

For the foregoing reasons, defendant's petition for attorney's fees (**Dockets # 26 and # 29**)

is hereby **GRANTED**.

> **SO ORDERED.**
> In San Juan, Puerto Rico, this _3 d_ day of December, 1999.
>
> SALVADOR E. CASELLAS
> United States District Judge